IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| THOMAS E. MARLER, #05720-093,<br><br>    Petitioner,<br><br>  v.<br><br>ESTELA DERR,<br><br>    Respondent. | Civil No. 22-00240 JAO-RT<br><br>ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 |

**<u>ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241</u>**

On June 2, 2022, the Court received from pro se Petitioner Thomas E. Marler ("Petitioner" or "Marler") a signed Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 ("Petition"). ECF No. 1. In the sole ground raised in the Petition, Petitioner asserts that Respondent Estela Derr ("Respondent" or "Warden Derr") and her staff at the Federal Detention Center in Honolulu, Hawaiʻi ("FDC Honolulu") on March 2, 2022, had ceased calculating his earned time credits under the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194. *See* ECF No. 1 at 6. More specifically, Petitioner asserts that he should have been awarded 70 days of FSA time credits, not only the 15 that appeared on his record. *See* ECF No. 1-4. Respondent submitted a response on August 4, 2022, arguing that

Petitioner failed to exhaust his administrative remedies, and that in any event, due to the discretion delegated to the Bureau of Prisons ("BOP") to calculate sentences, it need not continuously manually update time credits earned as demanded by Petitioner.  *See* ECF No. 9.  Respondent concedes that as of June 7, 2022, when Petitioner was transferred to home confinement in Montgomery, Alabama, Petitioner would have accrued 60 days of FSA time credits, *see id.* at 14, but also asserts that as of the date Petitioner was transferred to Alabama, the Court became divested of jurisdiction.  *See id.* at 15–17.  Petitioner submitted a reply on August 23, 2022, concurring that he is entitled to the 60 days of credit conceded to by the BOP.  ECF No. 10 at 1.  Pursuant to Rule 7.1(c) of the Local Rules of Practice of the United States District Court for the District of Hawaii, the Court finds this matter suitable for disposition without a hearing.  For the following reasons, the Petition is DISMISSED.

## I.     BACKGROUND[1]

The FSA provides in relevant part that, to "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs," prisoners shall earn a designated number of days of "time credits" for every 30 days of successful participation in such programs, which can be applied

---

[1] Because Petitioner is pro se, the Court liberally construes the Petition.  *See Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987).

toward either earlier movement into prerelease custody or earlier transfer to supervised release. 18 U.S.C. § 3632(d)(4) ("The Director of the Bureau of Prisons *shall transfer* eligible prisoners, as determined under section 3624(g), *into* prerelease custody or supervised release." (emphases added)); *see* 28 C.F.R. § 523.40(b) ("[A]n eligible inmate . . . may earn FSA Time Credits to be applied toward prerelease custody or early transfer to supervised release under 18 U.S.C. 3624(g)."); FSA Time Credits, 87 Fed. Reg. 2705, 2706 (Jan. 19, 2022) ("BOP's Final Rule") ("FSA Time Credits [can] be applied toward prerelease custody (*i.e.*, transfer to a Residential Reentry Center (RRC) or home confinement for service of a portion of the inmate's sentence) or transfer to supervised release (*i.e.*, early satisfaction of the inmate's term of imprisonment) under 18 U.S.C. 3624(g)."). Prisoners may also lose time credits for violating the rules of such programs. *See* 28 C.F.R. § 523.43. But even with the earning of such time credits, to be eligible for an early transfer into prerelease custody or supervised release, prisoners must first meet the requirements of 18 U.S.C. § 3624(g), by, for example, "show[ing] through . . . periodic risk reassessments a demonstrated recidivism risk reduction." 18 U.S.C. § 3624(g); *see also* 28 C.F.R. § 523.44(b)(2) (same).

On December 9, 2021, in Case No. CR-19-00031-001, the District of Guam, sentenced Petitioner to concurrent terms of imprisonment of twelve (12) months and one (1) day for violating 15 U.S.C. § 3 and 18 U.S.C. § 2, conspiracy to

restrain trade; 18 U.S.C. §§ 1957 and 2, money laundering; and 18 U.S.C. § 1956, conspiracy to commit money laundering.  *See* ECF No. 1 at 1; *see also* Amended Judgment in a Criminal Case, *United States v. Marler*, CR-19-00031-001 (D. Guam Jan. 7, 2022), ECF No. 254 ("Judgment"); Minutes, *United States v. Marler*, CR-19-00031-001 (D. Guam Dec. 9, 2021), ECF No. 243.  Credit for time served was awarded, *see* Judgment at 3, which amounted to one day.  *See* ECF No. 9-10 at 3.  On January 18, 2022, Petitioner self-surrendered at FDC Honolulu.  *See* ECF No. 1-4.

While incarcerated, on April 18, 2022, Petitioner submitted an "Inmate Request to Staff" form ("Cop-Out") regarding the calculation of his FSA time credits.  ECF Nos. 1-1, 1-4.  He followed up on that request by submitting a BP-8, "Documentation of Informal Resolution Attempt," ECF Nos. 1-2, 1-4, and received a response on May 2, 2022, that his sentence was computed accurately and that the "Unit Team" did not have the "capability to recalculate FSA credits."  ECF No. 1-2.  On May 18, 2022, Petitioner then submitted a BP-9, "Request for Administrative Remedy," stating that because he was less than six months from his projected release date, that he should be given "high priority for frequent updates," ECF Nos. 1-3, 1-4, but did not receive a response.  *See* ECF No. 1-4.  Petitioner asserts that "delay tactics" were employed by the BOP to "run out the clock."  *Id.*

4

The Petition alleges that Petitioner would have accumulated 70 days of FSA time credits by June 7, 2022, but that Respondent's staff indicated he had only accrued 15 days. *See* ECF No. 1-4. He asks solely for injunctive relief that awards him 70 days of FTC time credits. *See id.*; ECF No. 1 at 7. Although he does not specify *how* those time credits should be applied to his sentence, because Petitioner filed the Petition just five days prior to his expected pending release to home confinement, for the purposes of the Petition, the Court presumes that he wishes the time credits to be applied toward early transfer to supervised release.

In her response, Respondent indicates that Petitioner's time credits were calculated on March 2, 2022, and at that time, Petitioner had earned 15 days of time credits. *See* ECF No. 9 at 13. Respondent adds that on April 28, 2022, Petitioner was approved for placement in a residential re-entry facility under the CARES Act, First Step Act, and Second Chance Act, and that he was transferred to the facility on June 7, 2022. *See id.* Respondent explains that even if Respondent's FSA time credits were manually calculated, he would have accrued only 60 days of time credits by June 7, 2022, because prorated credits are not permitted under the FSA. *See id.* at 14. In any event, Respondent argues that the Court was divested of jurisdiction over the case when Petitioner was transferred to Alabama. *See id.* at 15–17. Petitioner argues in his reply that this Court maintains jurisdiction despite his transfer to home confinement; that the exhaustion

requirement should be waived in his circumstance where there was inadequate time to pursue administrative remedies prior to his release to home confinement; and that he should be awarded at least the 60 days of time credits conceded by Respondent. *See* ECF No. 10.

Petitioner was released from custody on November 9, 2022. *See* https://www.bop.gov/inmateloc/ (select "find by name" and search for "Thomas Marler") (last visited Mar. 16, 2023). He is currently serving concurrent two-year supervised release terms. *See* Judgment at 4.

## II. DISCUSSION

### A. Habeas Petitions Under 28 U.S.C. § 2241

"Review of the execution of a sentence may be had through petition for a writ of habeas corpus under 28 U.S.C. § 2241." *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir. 1984). Section 2241 allows "the Supreme Court, any justice thereof, the district courts and any circuit judge" to grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). A district court must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

**B.     The Habeas Petition Is Not Moot**

Article III of the Constitution limits the jurisdiction of the federal courts to "actual, ongoing" "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1; *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see United States v. Strong*, 489 F.3d 1055, 1059 (9th Cir. 2007).  "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot."  *Kittel v. Thomas*, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal quotation marks omitted).  Because "parties must continue to have a personal stake in the outcome of [a] lawsuit," *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted), generally, once a prisoner is released from custody, a habeas petition challenging the prisoner's confinement becomes moot unless there is "'some concrete and continuing injury other than the now-ended incarceration.'" *Qassim v. Bush*, 466 F.3d 1073, 1076 (D.C. Cir. 2006); *see also Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995) ("An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." (citations omitted)).

Here, Petitioner is no longer in custody but is currently serving a term of supervised release.  Thus, it is possible that, any time Petitioner served in custody beyond that which he should have due to a miscalculation of earned time credits

could form *part* of the basis of any modification of his supervised release term. *See* 18 U.S.C. § 3583(e) (requiring the court to consider certain Section 3553(a) factors before modifying a term of supervised release); *see also United States v. Johnson*, 529 U.S. 53, 60 (2000) ("The [supervised release] statute . . . does not reduce the length of a supervised release term *by reason of* excess time served in prison." (emphasis added)).

That this Court was not also Petitioner's sentencing court does not affect the mootness analysis. *See Mujahid v. Daniels*, 413 F.3d 991, 994–95 & n.3 (9th Cir. 2005) (rejecting the Government's argument that 2241 petition was moot when inmate was released from custody because the inmate's habeas court was not the same as inmate's sentencing court). Moreover, at the time of filing, Petitioner filed his Petition in the proper district court and named the proper respondent. *See id.* at 996. Because "'jurisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petitioner and the accompanying custodial change,'" that Petitioner was subsequently released to home confinement in Alabama to serve the remainder of his sentence before now serving his supervised release term, also does not change the mootness analysis. *Id.* (quoting *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990)). The Ninth Circuit cases considering facility-specific conditions-of-confinement claims and the federal

district court case from outside the Ninth Circuit cited to by Respondent, are inapposite and unpersuasive. *See* ECF No. 9 at 15–16.

Thus, as it is "possible for [Petitioner] to receive relief in the form of a reduced or modified term of supervised release," this case is not rendered moot. *Gunderson v. Hood*, 268 F.3d 1149, 1153 (9th Cir. 2001).

**C.     Incorrect Calculation Of FSA Time Credits**

Ordinarily, a federal prisoner must exhaust administrative remedies before filing a federal habeas petition. *See Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam). Waiver of the exhaustion requirement may be warranted in certain circumstances such as, for example, if administrative remedies would be futile, the administrative remedies would be inadequate, irreparable injury would result, or the administrative proceedings would be void. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *Terrell v. Brewer*, 935 F.2d 1015, 1019 (9th Cir. 1991). The prisoner bears the burden of demonstrating that one of the exhaustion exceptions applies. *See Green v. Carlson*, 884 F.2d 1394 (table), 1989 WL 106703, at *2 (9th Cir. Sep. 6, 1989) ("A district court's determination that a [federal prisoner] must exhaust administrative remedies will not be reversed when [the prisoner] fails to show affirmatively that one of the exhaustion exceptions is present." (citation omitted)). An unexcused failure to exhaust administrative remedies, however, is a

sufficient ground for dismissal of a § 2241 habeas petition. *See Martinez*, 804 F.2d at 571.

The BOP requires inmates to use its administrative remedy program to seek review of any issue relating to the BOP's implementation of earning and applying FSA time credits. *See* U.S. Dep't of Justice, Federal Bureau of Prisons, Program Statement No. 5410.01, *First Step Act of 2018 — Time Credits: Procedures for Implementation of 18 U.S.C. 3632(d)(4)*, at 17 (Nov. 18, 2022), https://www.bop.gov/policy/progstat/5410_01.pdf (last visited Mar. 16, 2023) ("Program Statement No. 5410.01"). That administrative remedy program consists of four steps: (1) presenting an issue of concern informally to staff, *see* 28 C.F.R. § 542.13(a); (2) submitting a formal request for administrative remedies to a facility's warden, *see* 28 C.F.R. 542.14(a); (3) appealing to the appropriate Regional Director, *see* 28 C.F.R. § 542.15(a); and (4) appealing to the BOP's General Counsel, *see id*. *See Seina v. Fed. Det. Ctr.-Honolulu*, Civ. No. 16-00051 LEK-KJM, 2016 WL 6775633, at *5 (D. Haw. Nov. 15, 2016) (describing the BOP's four-step administrative remedy procedure). In general, a warden has 20 days to respond, the Regional Director has 30 days to respond, and the General Counsel has 40 days to respond. *See* 28 C.F.R. § 542.18. These deadlines can be extended, with written notice provided to the inmate. *See id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the

inmate may consider the absence of a response to be a denial at that level." *Id.* Thus, a petitioner need only wait the allotted time before he appealed to the next level. *See Ghost Dancer v. McGrew*, No. CV 15-3164 DSF (GJSx), 2019 WL 8198194, at *3 (C.D. Cal. Aug. 13, 2019) ("The only sensible reading of § 542.18 . . . is that if the inmate does not receive a response . . . an inmate may consider the absence of a response to be a denial at that level." (footnote omitted)).

      Here, after receiving a "4/5/2022 report" showing he had earned 15 days of FSA time credits, Petitioner began engaging in the administrative remedy process on April 18, 2022, with his last action taken on May 18, 2022, but he did not thereafter proceed to steps 3 or 4. *See* ECF Nos. 1-1 through 1-3; ECF No. 10 at 2. He concedes he did not exhaust his administrative remedies, but argues that he could not do so because there was insufficient time to complete the process before his transfer to home confinement pursuant to the CARES Act on June 7, 2022. *See* ECF No. 10 at 2. But Petitioner did not raise this particular temporal difficulty in any of his administrative remedies requests submitted in steps 1 or 2. *See* ECF Nos. 1-1 through 1-3. And in any event, as a prisoner nonetheless remains in the custody of the BOP after transfer to home confinement, *see* 18 U.S.C. § 3624(c), it is not apparent to the Court why Petitioner could not continue to seek further administrative review while in home confinement. Indeed, the BOP had invited Petitioner to engage with the BOP through its administrative process even during

the course of this litigation.  *See* ECF No. 9 at 14–15 ("Should Petitioner raise specific concerns with BOP about his release date through the administrative process, those concerns will be fairly considered, and if the automated process goes live before November 2022, Petitioner may be eligible for an earlier, or even perhaps immediate, release at that time, in accordance with BOP's policies and procedures.").

    The Court concludes that Petitioner has failed to meet his burden of showing that exhaustion is waivable here, and finds *Brown v. Rieger*, 2:22-cv-00259-JAW, 2022 WL 17082097 (D. Me. Nov. 18, 2022), *report and recommendation adopted*, 2022 WL 17184294 (D. Me. Nov. 23, 2022), *appeal filed*, Case No. 22-1945 (1st Cir. Dec. 9, 2022), instructive.  There, the petitioner had reported to the BOP on January 3, 2022, to serve a twelve-month term of incarceration.  *See id.* at *1.  On March 23, 2022, the petitioner was informed that she was eligible for release to home confinement pursuant to the CARES Act, and she was ultimately released to home confinement on August 2, 2022, at which time she was given a Sentence Monitoring Calculation sheet indicating she had earned only 15 days of FSA credits.  *See id.* at *2.  Both while in custody at the federal detention center and upon transfer to home confinement, the petitioner had contacted various BOP offices regarding her FSA time credits accrual, as based on her calculations, she had earned at least 90 days of credits through July 2022, and an additional 15 days

through August 2022. *See id.* In all of her contacts, the petitioner was repeatedly given mistaken or incomplete information from the BOP and other federal officials regarding how she should obtain relief. *See id.* at *6. The petitioner filed her Section 2241 petition on August 24, 2022. *See id.* at *2.

In addressing the issue of administrative exhaustion, the magistrate concluded that the petitioner's failure to exhaust was excusable because: (1) there was apparent uncertainty of the administrative process, evidenced by the fact that the petitioner was told to contact various BOP offices around the country, and then was placed in home confinement in Maine, which was "far from her facility of incarceration" in Philadelphia; (2) the BOP had given the petitioner incomplete or mistaken information on multiple occasions regarding how she should obtain relief; (3) the delays in obtaining an accurate count of the petitioner's FSA credits were due to the BOP's interim procedures and decisions surrounding its automated system, and not any lack of diligence by the petitioner; and (4) the BOP's multi-tiered administrative remedies process required more than 90 days to complete "due to the in-built response times at each stage," which, given the petitioner's short sentence, would have exceeded the duration of custody to which she believed should have been imposed. *Id.* at *6.

Here, unlike the petitioner in *Brown*, Plaintiff has failed to demonstrate the futility of any diligent efforts on his part because the record is bare that Petitioner

has done anything more beyond submitting his three written requests in April and May 2022. Although the Court notes that the distance between FDC Honolulu and Petitioner's place of home confinement, Montgomery, Alabama, is multiple times as far as the distance between Maine and Philadelphia in *Brown*, Petitioner has not made any showing that fact exacerbated his ability to seek relief. Most importantly, even had Petitioner begun the administrative remedies process anew on June 7, 2022, he fails to show that the BOP's administrative remedies process could not have culminated prior to Petitioner's calculated custodial release date. Petitioner's bare identification of two administrative remedy cases that took more than seven months to resolve, *see* ECF No. 10 at 2, without more, such as whether the substance of the issues presented there were similar to his own, does not demonstrate otherwise.

Moreover, Respondent represents that Petitioner was released *early* to home confinement due to the CARES Act, Second Chance Act, *and First Step Act*. *See* ECF No. 9 at 13. In Petitioner's view, however, he was released only due to the CARES Act, and argues that Respondent's adherence to the CARES Act does not obviate the BOP's mandates under the FSA. *See* ECF No. 10 at 3. Petitioner's argument, however, fails to recognize that, as previously discussed, FSA time credits can be applied at the BOP's discretion to *either* early transfer to home

confinement (which does not affect the duration of an inmate's sentence) *or* early transfer to supervised release (which decreases an inmate's sentence). *See supra* p. 3. Thus, even if Petitioner had been initially released to home confinement under the CARES Act, retroactive application of FSA time credits toward early home confinement appears to be well within the BOP's discretion.

> The decision to release certain prisoners to home confinement early pursuant to the CARES Act resulted from emergency conditions at BOP facilities; it does not appear to have been intended to provide a benefit to the released prisoners. If BOP regularly or unreasonably capped the credits it applied toward supervised release in a way that made significant portions of FSA credits redundant, the BOP arguably would undermine the objectives of the FSA, which objectives include providing a strong incentive for prisoners to participate in qualifying programming and activities. Because the early home confinement decisions made pursuant to the CARES Act were temporary emergency measures, the retroactive allocation of FSA credits to home confinement for some individuals, like Petitioner, does not necessarily undermine the statute's objective.

*Brown*, 2022 WL 17082097, at *7. Further, and critically, because 18 U.S.C. § 3624(g)(2)(A)(iv) provides, "[e]xcept as provided in paragraph (4), a prisoner who is placed in home confinement shall remain in home confinement until the prisoner has served not less than 85 percent of the prisoner's imposed term of imprisonment," then it appears that the BOP may not have been able to terminate Petitioner's home confinement earlier than it did. *See* 18 U.S.C. § 3632(d)(4) ("The Director of the Bureau of Prisons shall transfer eligible prisoners, *as*

*determined under section 3624(g)*, into prerelease custody or supervised release." (emphasis added)). "In other words, depending on the length of the sentence and the number of FSA credits, there could be a maximum level of FSA credits the BOP is permitted to apply toward early supervised release." *Brown*, 2022 WL 17082097, at *7.

### III. CONCLUSION

(1) For the foregoing reasons, the Petition is DISMISSED. Because any amendment would be futile, this dismissal is without leave to amend. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

(2) The Clerk is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, March 17, 2023.



Jill A. Otake
United States District Judge

Civil No. 22-00240 JAO-RT, *Marler v. Derr*; ORDER DISMISSING PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241